

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00644-CV

**IN THE INTEREST OF J.S.**, a Child

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2024-PA-01027
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:          Rebeca C. Martinez, Chief Justice
                   Lori I. Valenzuela, Justice
                   H. Todd McCray, Justice

Delivered and Filed: February 11, 2026

AFFIRMED

Mother appeals the trial court's order terminating her parental rights to her child, J.S. (born 2024).[1] In Mother's sole appellate issue, she contends the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in J.S.'s best interest. We affirm.

### BACKGROUND

The Texas Department of Family and Protective Services (the "Department") initially removed J.S. from Mother's care due to concerns of domestic violence and her parents' inability

---

[1] To protect the privacy of the minor child, we use initials to refer to the child. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

to care for her due to their intellectual disabilities. J.S. was placed in the Department's care, and a family service plan was generated for Mother.[2] Mother's service plan required her to, among other things, take part in psychological and psychosocial evaluations; engage in court-ordered visitation, parenting classes, and domestic violence classes; show proof of stable housing; and provide a list of people in her support network to the Department. Although Mother attempted to engage in some of the services, she did not complete them, and the Department ultimately pursued termination of Mother's parental rights.

On July 31, 2025, and August 22, 2025, the trial court held a bench trial at which four witnesses testified: Department caseworker, Alyssa Prieto; J.S.'s foster parent, Foster Mother; and child advocate volunteers Laurie and Oscar. At the conclusion of the trial, the trial court signed an Order of Termination terminating Mother's parental rights and naming the Department permanent managing conservator of J.S. In its order, the trial court terminated Mother's rights pursuant to section 161.001(b)(1)(N) and section 161.003. The trial court additionally found that termination of Mother's parental rights was in J.S.'s best interest. On appeal, Mother challenges the legal and factual sufficiency of the evidence only as to the best interest finding.

## STANDARD OF REVIEW

To terminate parental rights pursuant to Family Code section 161.001, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE §§ 161.001(b), 161.206(a). To terminate parental rights pursuant to Family Code section 161.003, the trial court must find that: "(1) the parent has a mental or emotional illness or a mental deficiency that renders the parent unable to provide for the physical, emotional, and mental needs

---

[2] The trial court also terminated Father's parental rights; however, Father did not appeal the termination of his parental rights. Therefore, we limit our discussion to the relevant facts pertaining to Mother.

of the child; (2) the illness or deficiency, in all reasonable probability, proved by clear and convincing evidence, will continue to render the parent unable to provide for the child's needs until the 18th birthday of the child; (3) the [D]epartment has been the temporary or sole managing conservator of the child of the parent for at least six months preceding the date of the hearing on the termination . . . ; (4) the [D]epartment has made reasonable efforts to return the child to the parent; and (5) the termination is in the best interest of the child." TEX. FAM. CODE § 161.003(a).

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See* TEX. FAM. CODE §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (legal sufficiency). The trier of fact is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *In re J.P.B.*, 180 S.W.3d at 573. In a bench trial, such as here, "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citation omitted). We therefore defer to the trial court's judgment regarding credibility determinations. *See id.* While we must detail the evidence relevant to the issue of parental termination when reversing a finding based on insufficient evidence, we need not do so when affirming a termination verdict. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

### BEST INTEREST

Because Mother does not challenge the predicate grounds of termination, only whether termination was in J.S.'s best interest, we limit our review to the latter best interest finding.

When considering the best interest of the child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In*

*re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). "[T]he best interest standard does not permit termination [of parental rights] merely because a child might be better off living elsewhere." *In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.) (citation omitted). We also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE § 263.307(a). The Department has the burden of rebutting these presumptions with clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d 92, 97 (Tex. App.—San Antonio 2017, no pet.). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re R.S.-T.*, 522 S.W.3d at 97. To determine whether the Department satisfies its burden, the Texas Legislature has provided several statutory factors[3] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has provided a similar list of factors[4] to determine a child's best interest. TEX. FAM. CODE § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

---

[3] The statutory factors include: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[4] The *Holley* factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371–72.

A best interest finding, however, does not require proof of any particular factors. *In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). "A trier of fact may measure a parent's future conduct by [her] past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). This conduct can include a history of domestic violence, which can destabilize the home and expose children to physical and emotional harm if not resolved. *See, e.g.*, *In re J.I.T.P.*, 99 S.W.3d 841, 846–48 (Tex. App.—Houston [14th Dist.] 2003, no pet.). In analyzing these factors, the court must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

## DISCUSSION

### 1. *Child's Desires*

Under *Holley*, J.S. is too young to express her desires. "When a child is too young to express her desires, the factfinder may consider whether the child has bonded with her caregivers, is well-cared for by them, and whether the child has spent minimal time with a parent." *In re E.J.M.*, 673 S.W.3d 310, 334 (Tex. App.—San Antonio 2023, no pet.) (en banc). At the time of trial, J.S. was one year old and had lived with Foster Mother since she was three days old. Evidence at trial showed that all J.S.'s needs are being met in the foster home and that J.S. continues to bond

with her foster family. Foster Mother also cares for J.S.'s siblings, after Mother's rights were terminated.

Prieto, the Department caseworker, testified that all of Mother's visits with J.S. were scheduled on the same day of the week at the same time, she would send Mother reminders of her scheduled visits, and that transportation to the visits was provided. Nevertheless, evidence at trial revealed that Mother attended only sixteen of forty-five possible visits with J.S., and that most of the visits she missed were due to "sleeping through" them, with a few due to transportation issues. Of the visits Mother attended, the record shows her behavior was appropriate.

Given Mother's limited contact with J.S., J.S.'s continuous care by Foster Mother since she was three days old, and that J.S. continues to bond with her foster family, including her siblings, the factfinder may have reasonably formed a firm belief or conviction that the first *Holley* factor was neutral or favored termination. *See id.*; *In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied) (when child is too young to express a desire, factfinder may consider whether child is bonded with caregiver and well-cared for); *In re S.D.T.*, No. 04-23-00544-CV, 2023 WL 8606824, at *6 (Tex. App.—San Antonio Dec. 13, 2023, pet. denied) (mem. op.).

2. *Child's Present and Future Emotional and Physical Needs and Present and Future Emotional and Physical Danger to Child*

The second and third *Holley* factors focus on the child's needs and the danger posed to the child. As to the former, evidence at trial showed that J.S. has some developmental "concerns" and is currently in an early childhood intervention program and takes part in several different forms of therapy. Prieto testified that, based on her assessment of Mother, including Mother's inability to attend visits consistently and to properly care for herself and maintain her hygiene, Mother is unequipped to care for J.S.'s needs. *See In re A.L.M.*, 300 S.W.3d 914, 919 (Tex. App.—Texarkana

2009, no pet.) ("The needier the child, the more able the parent must be."). Moreover, there is no evidence in the record showing that Mother attended any of J.S.'s therapy sessions or otherwise sought further involvement in J.S.'s medical needs. *In re E.J.M.*, 673 S.W.3d at 334 (explaining that the fact finder "could infer that [parent] would be unable to provide for [child's] physical needs based on his failure to identify [child's] current providers and his failure to communicate with [child's] doctors or foster parents about [child's] medical needs").

As for the third *Holley* factor—emotional and physical danger to J.S.—as the predicate ground for termination, which Mother does not challenge on appeal, the trial court found that Mother constructively abandoned J.S. *See* TEX. FAM. CODE § 161.001(b)(1)(N). "The trial court's determination regarding [Mother's] termination under section 161.001(b)(1) is properly considered in its findings that termination is in the best interest of the child and is, in fact, probative in determining the child's best interest." *In re R.S.-T.*, 522 S.W.3d at 116. Evidence at trial also showed that Mother desired to continue her relationship with Father despite the existence of domestic violence between the two dating back to 2019, and that Mother failed to attend any of her court-ordered domestic violence classes. *In re E.D.*, 419 S.W.3d at 620; *In re J.I.T.P.*, 99 S.W.3d at 846–48. These two factors weigh in favor of termination.

### 3. *Parental Abilities, Plans for the Child, and Stability of Home*

Prieto testified that Mother already had the rights to two of her other children terminated. Evidence at trial showed that at the group home where Mother was staying, she did have a bassinet for J.S.; however, it was filled with items Mother had been asked to clean but hadn't. The record also shows that Mother does not properly clean herself or her home, and Mother's fridge had no food when child advocate volunteer Oscar visited. Evidence additionally shows that Mother is unable to care for J.S. without prompting.

What the record fails to show is any plans from Mother to provide a safe, clean, and stable home for J.S. "A child's need for permanence through the establishment of a 'stable, permanent home' has been recognized as the paramount consideration in a best-interest determination." *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). On the other hand, Foster Mother testified that she plans to be J.S.'s permanent placement. These factors weigh in favor of termination.

### 4. *Mother's Acts or Omissions and Any Excuses*

Evidence at trial indicated that Mother suffers from an intellectual disability. *See In re R.S.-T.*, 522 S.W.3d at 113 ("A parent's mental illness or disability, without more, is not grounds for terminating the parent-child relationship. However, if a parent's mental state causes her to engage in conduct that endangers the physical or emotional well-being of a child, that conduct can be considered in a termination proceeding.") (internal citations and quotation marks omitted); *see also* TEX. FAM. CODE § 161.003. On this record, there is no evidence that Mother was taking the necessary steps to improve her condition or living arrangement so she could properly care for J.S. and provide a safe and stable environment for J.S. *See In re R.S.-T.*, 522 S.W.3d at 113.

Prieto testified that Mother has not demonstrated she can meet J.S.'s needs, cannot reliably attend visits, is confused about why the Department became involved, and questions who J.S.'s father is despite DNA tests confirming J.S.'s paternity. Although the record shows that transportation issues led to a few missed visits, the overwhelming majority were due to Mother oversleeping. Based on the evidence presented, the trial court could have formed a firm belief or conviction that Mother was unable to provide a stable life or environment for J.S.

## CONCLUSION

After reviewing the evidence under the appropriate standards of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in J.S.'s best interest. Therefore, we hold that the evidence is legally and factually sufficient to support the trial court's best interest finding. We affirm the trial court's Order of Termination.

Lori I. Valenzuela, Justice